Matthew Mellen (Bar No. 233350)
MELLEN LAW FIRM
One Embarcadero Center
San Francisco, CA 94111
Telephone:    (415) 315-1653
Facsimile:     (415) 276-190

Attorney for Plaintiffs,
OCTAVIO MARTINEZ
MARI CRUZ MARTINEZ

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCTAVIO MARTINEZ, individually and on behalf of all others similarly situated, and MARI CRUZ MARTINEZ, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>TRINITY FINANCIAL SERVICES, LLC; SPECIAL DEFAULT SERVICES, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:17-cv-03612-LB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1.   Violation of 15 U.S.C. 1692e<br><br>2.   Violation of 15 U.S.C. 1692f<br><br>3.   Violation of Civil Code § 1788.17<br><br>4.   Violation of Civil Code § 1788.17<br><br>**CLASS ACTION**<br>(CCP § 378)<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.   In the case at hand, Defendants have engaged in deceptive debt collection practices with regard to its collection of the loan formerly secured by Plaintiff's property.  In July 2012, Plaintiffs filed a Chapter 7 bankruptcy petition, pursuant to which they received a discharge in November 2013.  However, despite the Bankruptcy Code's very clear prohibition on the accrual of interest by a an unsecured or under secured creditor, Defendants charged Plaintiffs interest on the loan while the property was underwater and are now demanding that Plaintiffs pay the interest as a condition of reinstatement.  Moreover, Defendants have sent Plaintiffs inconsistent debt collection demands

1  which range by over $10,000.00.  With a foreclosure looming and no other recourse, this lawsuit
2  follows.

## JURISDICTION

4  2.  This is an action asserting violations of California and Federal Law.  Venue is proper in this
5  Court because a substantial part of the events giving rise to the claims herein occurred in the City of
6  Oakley and County of Contra Costa.

## PARTIES

8  3.  At all times mentioned herein, Plaintiffs OCTAVIO MARTINEZ and MARI CRUZ
9  MARTINEZ (hereinafter "Plaintiffs") are adult residents of Contra Costa County, California.
10  Plaintiffs are the owners of the property located at 1051 Warhol Way, Oakley, CA 94561.
11  4.  The term "the Class" includes Plaintiffs and all class members.
12  5.  Plaintiffs and the Class are all identifiable, similarly situated persons who were charged
13  interest by Defendants following a Chapter 7 Bankruptcy Discharge.
14  6.  Plaintiffs are informed and believe, and thereon allege that at all relevant times, Defendant
15  TRINITY FINANCIAL SERVICES, LLC ("TRINITY"), is a diversified financial marketing and/or
16  services corporation engaged primarily in residential mortgage banking and/or related businesses.
17  Defendant TRINITY is believed to be the owner of, and beneficiary under, the Deed of Trust secured
18  by Plaintiff's property.
19  7.  Plaintiffs are informed and believe, and thereon allege that at all relevant times, Defendant
20  SPECIAL DEFAULT SERVICES ("SDS") is a diversified financial marketing and/or services
21  corporation engaged primarily in debt collection and other residential mortgage related businesses.
22  8.  Plaintiffs are ignorant of the true name and capacities of each Defendant sued herein under
23  the fictitious names DOES 1 through 50, inclusive, and Plaintiffs will amend this complaint to allege
24  such names and capacities as soon as they are ascertained. Each of said fictitiously named
25  Defendants is responsible in some manner for the wrongful acts for which Plaintiffs have
26  complained herein.

9. This court has personal jurisdiction over the parties as Defendant engages in business within the State of California. Defendant's business involves providing mortgage loans and related services to consumers in the State of California.

## AGENCY ALLEGATIONS

10. Plaintiffs are informed and believes and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants. Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest. Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## STATEMENT OF FACTS

11. Plaintiffs OCTAVIO MARTINEZ and MARI CRUZ MARTINEZ are the owners of the property located at 1051 Warhol Way, Oakley, CA 94561 (the "Property"). The Property is Plaintiffs' principal residence and is security for a loan made for personal, family, or household purposes.

12. In or around November 2005, Plaintiffs obtained a secured first mortgage loan with Sierra Pacific Mortgage in the amount of $433,896.00. Furthermore, in November 2005, Plaintiffs obtained a secured second mortgage loan with Sierra Pacific Mortgage in the amount of $54,237.00.

13. Thereafter, in or around November 2008, Plaintiffs unexpectedly fell behind in their mortgage payments.

14. In July 2012, the principal balance of Plaintiffs' second loan was approximately $55,300.00.

15. As a result of the debt they owed, Plaintiffs filed a Chapter 7 bankruptcy petition in the Northern District of California on July 10, 2012. At the time of Plaintiffs' bankruptcy, Plaintiffs' property was underwater. In fact, Plaintiffs are informed and believe that on November 5, 2013, Plaintiffs received a discharge.

16. Thereafter, Plaintiffs' second loan was transferred to Defendant TRINITY. Plaintiffs are informed and believe that Defendant TRINITY was aware that Plaintiffs' personal obligation to pay the debt had been discharged.

17. Between September 2012 and the present, the value of Plaintiffs' property was less than the claims secured by the property.

18. For example, in September 2012, the balance of the loans secured by Plaintiffs' property totaled approximately $488,145.00. However, the value of the property ranged from between $250,000.00 to $275,000.00, according to comparable sales in the area. Therefore, Plaintiff's property was underwater, and the loan at issue was entirely unsecured at that time.

19. In April 2013, the balance of the loans secured by Plaintiffs' property totaled approximately $543,450.00. However, the value of the property was approximately $271,000.00. Therefore, Plaintiffs' property was underwater, and the loan at issue was entirely unsecured at that time.

20. In August 2014, the balance of the loans secured by Plaintiffs' property totaled approximately $693,000.00. However, a comparable property sold in August 2014 reveals that Plaintiffs' property was only valued at approximately $417,000.00. Therefore, Plaintiffs; property was underwater, and the loan at issue was entirely unsecured at that time.

21. In May 2017, the balance of the loans secured by Plaintiffs' property totaled approximately $720,000.00. However, the value of the property in May 2017 was approximately $480,000.00. Therefore, Plaintiffs' property was underwater, and the loan at issue was entirely unsecured at this time.

22. From July 2012 through the present, TRINITY charged Plaintiffs interest and late fees on the loan, as evidenced by a claim submitted to the bankruptcy court by Defendant TRINITY in March 2017.

23. In July 2015, TRINITY sent Plaintiff a statement which identified Trinity Financial Services, LLC as the Creditor to whom the debt was owed. The statement said that Plaintiffs were past due on payments since September 20, 2008. According to the notice, the total delinquency owed on the loan was $26,021.69 in accrued interest. Further, the notice stated that Plaintiffs' principal balance was $53,911.84, bringing the total owed on the loan to $79,933.53.

24. In October 2015, TRINITY sent Plaintiff a statement which identified Trinity Financial Services, LLC as the Creditor to whom the debt was owed. According to the notice, the total delinquency owed on the loan was $27,403.09 in accrued interest. Further, the notice stated that Plaintiffs' principal balance was $53,911.84, bringing the total owed on the loan to $81,314.93.

25. Thus, Plaintiff contacted TRINITY to attempt to obtain a loan modification on the second loan and, in October 2015, submitted a complete loan modification application to TRINITY. However, Plaintiff never received a response from TRINITY to the application and, instead, it continued to send correspondence to Plaintiffs attempting to collect on the loan and continuing to add interest to Plaintiffs' loan balance. For instance, in May 2016, TRINITY sent Plaintiff a statement which identified Trinity Financial Services, LLC as the Creditor to whom the debt was owed. According to the notice, the total delinquency owed on the loan was $29,480.55 in accrued interest. Further, the notice stated that Plaintiffs' principal balance remained $53,911.84, bringing the total owed on the loan to $83,392.39.

26. On August 1, 2016, Defendant SPECIAL DEFAULT SERVICES ("SDS") sent Plaintiffs correspondence on behalf of TRINITY which indicated that the letter was being sent in an attempt to collect a debt. The correspondence indicated that it was providing services related to a debt owed to TRINITY and that as of August 1, 2016, the delinquency owed for the property was $18,645.16 in interest. Since the principal balance of the loan remained at $53,911.84, this brought the total owed on the loan to $73,557.00.

## CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this action on behalf of themselves and all others similarly situated. Therefore, under California Code of Civil Procedure § 378, Plaintiffs will ask the Court to certify the following classes under 15 U.S.C. 1692, et seq. and California Civil Code § 1788.17, respectively, defined as:

    (a) All borrowers who filed for Chapter 7 Bankruptcy protection and received a discharge thereunder, had a second lien loan at the time of filing the Chapter 7 Bankruptcy that was underwater or undervalued at anytime after the filing of the Chapter 7 Bankruptcy, and that received correspondence from Defendant SDS and/or Defendant

5
FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

TRINITY indicating that it was attempting to collect interest or late fees from the borrower that accumulated while the property was underwater or undervalued.

28. This claim is particularly well-suited for class treatment because of the following:

(a) Predominance: Questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class.

(b) Superiority: a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member will be uniform. Additionally, effective redress for each and every class member against Defendants, in his or her own lawsuit, would be difficult or unlikely because of the difficulty in finding or affording competent counsel in this field of law and the cost of individual lawsuits would be prohibitive. Even if individual class members could afford or justify the prosecution of their separate claims, the court system may not be up to the task. Individualized litigation may lead to incongruous and conflicting judgments against Defendants. To the contrary, a class action procedure involving all class members, Defendants and the court present fewer management difficulties, and provide the benefit of a single adjudication, economy of scale, and judicial efficiency and fairness.

(c) Numerosity: Defendants service hundreds of loans. Plaintiffs are informed and believe that it is standard practice to unlawfully charge borrowers interest and late fees following a chapter 7 bankruptcy discharge. Thus, the Class involved is so numerous that joinder of all members individually would be impracticable. The precise identities, numbers and addresses of members of the Class are unknown to Plaintiffs, but are easily known to Defendants, likewise each of the effected borrowers is within the possession of Defendants.

(d) Commonality: There are questions of law and/or fact that are common to each member of the class. The common questions of law and fact are:

(1) Did Defendants send correspondence attempting to collect interest and late fees while the borrower was underwater or undervalued.

(e) Typicality: Plaintiffs' claims are typical of the claims of the members of the Class because Defendants routinely attempt to collect debt that is not owed to them.  would be the identical allegation for every other Class member. Plaintiffs and all members of the Class have suffered a similar harm arising from Defendant's violations of law as alleged herein for which there are damages.

(f) Adequacy of Representation:  Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained competent counsel for this class action and Plaintiffs intend to prosecute this action vigorously.  Counsel for Plaintiffs is experienced in class action jurisprudence, has defended numerous wage and hour class actions successfully, and has successfully obtained certification and litigated to completion a prevailing wage class action.  Plaintiffs and its counsel will fairly and adequately protect the interests of all of the members of the Class.

**FIRST CAUSE OF ACTION**
**Violation of 15 U.S.C. 1692e**
(Against Defendant SDS)

29. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

30. The Fair Debt Collection Practices Act provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, including the false representation of the character, amount, or legal status of any debt. See 15 U.S.C. 1692e(2)(A).

31. In November 2005, Plaintiffs obtained a mortgage loan with Sierra Pacific Mortgage, executing a Promissory Note and Deed of Trust in favor of his lender to obtain the financing. Plaintiffs' loan was then transferred to Defendant TRINITY and in August 2016, Defendant SPS began sending Plaintiffs letters demanding payment of the debt to TRINITY.

32. Pursuant to 15 U.S.C. 1692a(6), SDS is a debt collector because regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another.

33. Beginning in or around August 2016, Defendant SDS began making overinflated debt collection demands of Plaintiffs in connection with its collection of the debt owed to Trinity. At the time that SDS began servicing this loan, the loan was in default.

34. On August 1, 2016, Defendant SPECIAL DEFAULT SERVICES ("SDS") sent Plaintiffs correspondence on behalf of TRINITY which indicated that the letter was being sent in an attempt to collect a debt. The correspondence indicated that it was providing services related to a debt owed to TRINITY and that as of August 1, 2016, the delinquency owed for the property was $18,645.16 in interest. Since the principal balance of the loan remained at $53,911.84, this brought the total owed on the loan to $73,557.00.

35. Plaintiffs are informed and believe that the August 2016 letter was inflated and constituted improper demands by SDS with regard to the amount owed on the loan owed to Trinity.

36. Therefore, Defendant's demands of Plaintiffs for an inflated balance on the loan in August 2016 were false, deceptive, and misleading representations regarding the amount of the loan which it made in connection with its collection of the loan.

37. As a result of Defendant's conduct, Plaintiffs have suffered, and continue to suffer various damages and injuries, including but not limited to, excessive interest charges which are added to Plaintiffs' principal balance, attorneys' fees and costs, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

38. Pursuant to 15 U.S.C. § 1692k, Defendant is liable for actual damages, civil penalties in the amount of $1,000, attorney's fees, and costs of court.

39. In addition, Plaintiffs seek a judicial declaration of his rights with regard to the subject loan. A judicial declaration is necessary and appropriate at this time under the circumstances so that the parties can ascertain their rights and duties in order to avoid Defendant SDS wrongly taking title to Plaintiffs' Property after it has been determined to be making inflated monetary demands from Plaintiffs in violation of 15 U.S.C. § 1692e.

///

///

///

## SECOND CAUSE OF ACTION
**Violation of 15 U.S.C. 1692f**
(Against Defendant SDS)

40. Plaintiffs incorporates all allegation of this complaint and re-allege them as though they were fully set forth herein.

41. The Fair Debt Collection Practices Act provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*. (15 U.S.C. 1692f (*emphasis added*).)

42. Pursuant to 15 U.S.C. 1692a(6), SDS is a debt collector because regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another.

43. Beginning in or around August 2016, Defendant SDS began making overinflated debt collection demands of Plaintiffs in connection with its collection of the debt owed to Trinity. At the time that SDS began servicing this loan, the loan was in default. Accordingly, Defendant T.D. Service is a debt collector pursuant to 15 U.S.C. 1692a(6)

44. In November 2005, Plaintiffs obtained a mortgage loan with Sierra Pacific Mortgage, executing a Promissory Note and Deed of Trust in favor of his lender to obtain the financing. Plaintiffs' loan was then transferred to Defendant TRINITY and in August 2016, Defendant SPS began sending Plaintiffs letters demanding payment of the debt to TRINITY.

45. In July 2012, Plaintiffs filed a Chapter 7 bankruptcy petition. Pursuant to 11 U.S.C. § 506(b), to the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Thus, to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement.

46. As set forth herein, between July 2012 and the present, Plaintiffs' property was underwater and the loan at issue was unsecured through that time period. Thus, Defendant's ability to charge interest on the loan was limited during that time, pursuant to 11 U.S.C. § 506(b).

47. Despite this fact, between July 2012 and the present, Plaintiffs' loan was charged interest and late fees.  This is evidenced by the proof of claim submitted by TRINITY in March 2017 showing that Plaintiffs' loan accrued interest and late charges in the amount of $176.89 per month from July 2012 through November 2015 and in the amount of $199.65 per month from December 2015 to the present. Thus, from July 2012 to the present, Plaintiffs were charged nearly $10,000.00 in interest and nearly $700.00 in late fees.

48. Then on or about August 1, 2016, Defendant SDS sent Plaintiffs correspondence which demanded $18,645.16 in past due payments.  Plaintiffs are informed and believe that at least $10,000.00 of the August 1, 2016 demand from SDS includes interest and late fees which were charged while the lien was unsecured between July 2012 and the present.

49. Because 11 U.S.C. § 506(b) limits a creditor's ability to charge interest and late fees on an undersecured debt, it was improper for Plaintiffs' loan to accrue interest and late fees while the property was underwater.  Therefore, Defendant's demand for interest and fees which were improperly assessed during this time, amounts to a demand for a debt which was unauthorized by law, in violation of 11 U.S.C. 1692f.

50. As a result of Defendant's conduct, Plaintiffs have suffered, and continue to suffer various damages and injuries, including but not limited to, excessive interest charges which are added to Plaintiffs' principal balance, attorneys' fees and costs, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

51. Pursuant to 15 U.S.C. § 1692k, Defendant is liable for actual damages, civil penalties in the amount of $1,000, attorney's fees, and costs of court.

52. In addition, Plaintiffs seek a judicial declaration of their rights with regard to the subject loan. A judicial declaration is necessary and appropriate at this time under the circumstances so that the parties can ascertain their rights and duties in order to avoid Defendant SPS wrongly taking title to

Plaintiffs' Property after it has been determined to be making inflated monetary demands from Plaintiffs in violation of 15 U.S.C. § 1692f.

### THIRD CAUSE OF ACTION
### Violation of California Civil Code § 1788.17
(Against ALL Defendants)

53. Plaintiffs incorporate all allegations of this complaint and re-alleges them as though they were fully set forth herein.

54. Defendants' actions, as set forth herein, constitute a violation of Civil Code § 1788.17, which requires a debt collector to comply with the provisions of 15 U.S.C. 1692b to 1692j.

55. Defendant SDS is a debt collector as defined by Civil Code § 1788.2 because Defendant SDS, regularly, on behalf of himself, engages in debt collection of the loan, which is money that is due or owing to Defendant. Defendant TRINITY is also a debt collector pursuant to the Rosenthal Act.

56. Pursuant to Civil Code § 1788.17, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, and shall be subject to the remedies in 15 U.S.C. 1692k.

57. The Fair Debt Collection Practices Act provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, including the false representation of the character, amount, or legal status of any debt. See 15 U.S.C. 1692e(2)(A).

58. Beginning in or around July 2015, Defendants began making overinflated debt collection demands of Plaintiffs in connection with its collection of the debt owed to TRINITY.

59. First, in July 2015, TRINITY sent Plaintiff a statement which identified Trinity Financial Services, LLC as the Creditor to whom the debt was owed. The statement said that Plaintiffs were past due on payments since September 20, 2008. According to the notice, the total delinquency owed on the loan was $26,021.69 in accrued interest. Further, the notice stated that Plaintiffs' principal balance was $53,911.84, bringing the total owed on the loan to $79,933.53.

60. In October 2015, TRINITY sent Plaintiff a statement which identified Trinity Financial Services, LLC as the Creditor to whom the debt was owed. According to the notice, the total

11

1  delinquency owed on the loan was $27,403.09 in accrued interest.  Further, the notice stated that

2  Plaintiffs' principal balance was $53,911.84, bringing the total owed on the loan to $81,314.93.

3  61.    In May 2016, TRINITY sent Plaintiff a statement which identified Trinity Financial Services,

4  LLC as the Creditor to whom the debt was owed.  According to the notice, the total delinquency

5  owed on the loan was $29,480.55 in accrued interest.  Further, the notice stated that Plaintiffs'

6  principal balance remained $53,911.84, bringing the total owed on the loan to $83,392.39.

7  62.    On August 1, 2016, Defendant SPECIAL DEFAULT SERVICES ("SDS") sent Plaintiffs

8  correspondence on behalf of TRINITY which indicated that the letter was being sent in an attempt to

9  collect a debt.  The correspondence indicated that it was providing services related to a debt owed to

10 TRINITY and that as of August 1, 2016, the delinquency owed for the property was $18,645.16 in

11 interest.  Since the principal balance of the loan remained at $53,911.84, this brought the total owed

12 on the loan to $73,557.00.

13 63.    Plaintiffs are informed and believe that the Past Due Notices from TRINITY and the

14 correspondence from SDS on August 1, 2016 were inflated and constitute an improper demand by

15 Defendants with regard to the amount owed on the loan.

16 64.    Therefore, Defendants' demand of Plaintiffs for an inflated balance on the loan were false,

17 deceptive, and misleading representations regarding the amount of the loan which it made in

18 connection with its collection of the loan.

19 65.    As a result of Defendants' conduct, Plaintiffs have suffered, and continues to suffer various

20 damages and injuries, including but not limited to, excessive interest charges which are added to

21 Plaintiffs' principal balance, attorneys' fees and costs, severe emotional distress, loss of appetite,

22 frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

23 66.    As a result of Defendants' conduct, Plaintiffs have suffered, and continues to suffer various

24 damages and injuries, including an inflated loan balance demanded by Defendants from Plaintiffs.

25 67.    Pursuant to Civil Code § 1788.17, every debt collector that violates Sections 1692b to 1692j,

26 inclusive, shall be subject to the remedies in 15 U.S.C. 1692k.  Pursuant to 15 U.S.C. § 1692k,

27 Defendants are liable for actual damages, civil penalties in the amount of $1,000, attorney's fees, and

28 costs of court.

# FOURTH CAUSE OF ACTION
**Violation of California Civil Code § 1788.17**
(Against Defendant TRINITY)

68. Plaintiffs incorporate all allegations of this complaint and re-alleges them as though they were fully set forth herein.

69. Defendant's actions, as set forth herein, constitute a violation of Civil Code § 1788.17, which requires a debt collector to comply with the provisions of 15 U.S.C. 1692b to 1692j.

70. Defendant is a debt collector under the Rosenthal Act.

71. Pursuant to Civil Code § 1788.17, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, and shall be subject to the remedies in 15 U.S.C. 1692k.

72. The Fair Debt Collection Practices Act provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*. (15 U.S.C. 1692f (*emphasis added*).)

73. In November 2005, Plaintiffs obtained a mortgage loan with Sierra Pacific Mortgage, executing a Promissory Note and Deed of Trust in favor of his lender to obtain the financing. Plaintiffs' loan was then transferred to Defendant TRINITY and in August 2016, Defendant SPS began sending Plaintiffs letters demanding payment of the debt to TRINITY.

74. In July 2012, Plaintiffs filed a Chapter 7 bankruptcy petition. Pursuant to 11 U.S.C. § 506(b), to the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Thus, to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement.

75. As set forth herein, between July 2012 and the present, Plaintiffs' property was underwater and the loan at issue was unsecured through that time period. Thus, Defendant's ability to charge interest on the loan was limited during that time, pursuant to 11 U.S.C. § 506(b).

76. Despite this fact, between July 2012 and the present, Plaintiffs' loan was charged interest and late fees. This is evidenced by the proof of claim submitted by TRINITY in March 2017 showing that Plaintiffs' loan accrued interest and late charges in the amount of $176.89 per month from July 2012 through November 2015 and in the amount of $199.65 per month from December 2015 to the present. Thus, from July 2012 to the present, Plaintiffs were charged nearly $10,000.00 in interest and nearly $700.00 in late fees.

77. Then beginning in July 2015, Defendant began making inflated demands for interest and late fees improperly accrued during this time period.

78. Because 11 U.S.C. § 506(b) limits a creditor's ability to charge interest and late fees on an undersecured debt, it was improper for Plaintiffs' loan to accrue interest and late fees while the property was underwater. Therefore, Defendant's demand for interest and fees which were improperly assessed during this time, amounts to a demand for a debt which was unauthorized by law, in violation of 11 U.S.C. 1692f.

79. As a result of Defendant's conduct, Plaintiffs have suffered, and continues to suffer various damages and injuries, including but not limited to, excessive interest charges which are added to Plaintiffs' principal balance, attorneys' fees and costs, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

80. As a result of Defendant's conduct, Plaintiffs have suffered, and continuesto suffer various damages and injuries, including an inflated loan balance demanded by Defendant from Plaintiffs.

81. Pursuant to Civil Code § 1788.17, every debt collector that violates Sections 1692b to 1692j, inclusive, shall be subject to the remedies in 15 U.S.C. 1692k. Pursuant to 15 U.S.C. § 1692k, Defendant is liable for actual damages, civil penalties in the amount of $1,000, attorney's fees, and costs of court.

///

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs OCTAVIO MARTINZ and MARI CRUZ MATRINEZ demand a trial by jury. Plaintiffs pray for judgment and order against Defendants, as follows:

1. That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;
2. For an order requiring Defendants to show cause, if it has any, why it should not be enjoined as set forth below, during the pendency of the action;
3. For damages, and disgorgement;
4. For compensatory and statutory damages, attorneys' fees, and costs according to proof;
5. For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;
6. For such other and further relief as the Court may deem just and proper.

DATED: July 20, 2017                              Respectfully submitted,

                                                  MELLEN LAW FIRM


                                                   /s/ *Matthew Mellen*
                                                  Matthew Mellen, Esq.
                                                  Attorneys for Plaintiffs
                                                  OCTAVIO MARTINEZ
                                                  MARI CRUZ MARTINEZ