United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| OCTAVIO MARTINEZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TRINITY FINANCIAL SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 17-cv-03612-LB<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO EXPUNGE AND FOR ATTORNEY'S FEES**<br><br>Re: ECF Nos. 15, 19 |

## INTRODUCTION

In this class-action lawsuit, the plaintiffs challenge the defendants' attempts to collect on their defaulted mortgage loan as an unfair debt-collection practice under federal and state law.[1] The defendants moved to dismiss the complaint under Rule 12(b)(6) and also filed a motion to expunge lis pendens and to obtain attorney's fees.[2] The court finds that it can decide the matter without oral argument, *see* Civ. L. R. 7-1(b). The court grants the motion to dismiss the complaint

---

[1] *See generally* First Amend. Compl. ("FAC") – ECF No. 13. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mots. – ECF Nos. 15, 19.

ORDER – No. 17-cv-03612-LB

and dismisses the complaint against both defendants with leave to amend. The court denies as moot the defendants' motion to expunge and denies the motion to award attorney's fees.

## STATEMENT

### 1. The Plaintiffs' Mortgage Default and Bankruptcy

The plaintiffs own a property at 1051 Warhol Way, Oakley, CA 94561.[3] In November 2005, they obtained two mortgage loans secured on the property from Sierra Pacific Mortgage.[4] The first loan was for $433,896.[5] The second was for $54,237.00.[6] Around November 2008, they "fell behind in their mortgage payments."[7] On July 10, 2012, the plaintiffs filed a Chapter 7 bankruptcy petition in the Northern District of California.[8] On November 5, 2013, they "received a discharge."[9]

### 2. Claims Secured on the Plaintiffs' Property Exceed Property Value

At the time they filed bankruptcy, the plaintiffs' property was underwater.[10] "Between September 2012 and the present, Plaintiffs' property value was less than the claims secured on the property."[11] In September 2012, the total balance of loans secured on the property was $488,145 but the property value was $250,000 to $275,000.[12] In April 2013, the balance of the loan secured on the property was $543,450 but the property value was $271,000.[13] In August 2014, the balance

---

[3] FAC – ECF No. 13 at 3 (¶ 11).
[4] *Id.* at 3 (¶12).
[5] *Id.*
[6] *Id.*
[7] *Id.* at 3 (¶ 13).
[8] *Id.* at 3 (¶ 15).
[9] *Id.*
[10] *Id.*
[11] *Id.* at 4 (¶ 17).
[12] *Id.* at 4 (¶ 18).
[13] *Id.* at 4 (¶ 19).

ORDER – No. 17-cv-03612-LB  2

of the loans secured on the property was $543,450 but the property value was $417,000.[14] In May 2017, the balance of the loans secured on the property was $720,000 but the property value was $480,000.[15]

### 3. Trinity's Attempts to Collect

After the plaintiffs had been discharged, Sierra Pacific Mortgage transferred the second mortgage loan to Trinity.[16] Trinity recorded an assignment of deed of trust from Sierra to Trinity on April 27, 2016.[17] "[Trinity] was aware that Plaintiffs' personal obligation to pay the debt had been discharged."[18] "From 2012 through the present, [Trinity] charged Plaintiffs interest and late fees on the loan."[19] Trinity charged these fees while the property was underwater.[20] In July 2015, Trinity sent a statement saying the plaintiffs owed them a total of $79,933.53, including $26,021.69 in accrued interest.[21] In October 2015, Trinity sent a statement saying the plaintiffs owed a total of $81,314.93, including $27,403.09 in accrued interest.[22]

In October 2015, the plaintiffs "submitted a complete loan modification application to [Trinity]."[23] Trinity did not respond to the loan modification application.[24] Trinity instead "continued to send correspondence to Plaintiffs attempting to collect on the loan," including a

---

[14] *Id.* at 4 (¶ 20).

[15] *Id.* at 4 (¶ 21).

[16] *Id.* at 4 (¶ 16); Request for Judicial Notice – ECF No. 16, Ex. B. The court grants the unopposed request for judicial notice and judicially notices the public records attached to them (but not the truth of any fact allegations in them). *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[17] Request for Judicial Notice – ECF No. 16, Ex. B.

[18] FAC – ECF No. 13 at 4 (¶ 16).

[19] *Id.* at 4 (¶ 23).

[20] *Id.* at 4 (¶¶ 17–21).

[21] *Id.*

[22] *Id.* at 5 (¶ 24).

[23] *Id.* at 5 (¶ 25).

[24] *Id.*

ORDER – No. 17-cv-03612-LB     3

1 statement in May 2016 saying that the plaintiffs owed Trinity $81,314.93, including $29,480.55 in interest.[25]

### 4. Special Default Services Correspondence with Plaintiffs

On August 1, 2016, Special Default Services sent the plaintiffs a letter "on behalf of [Trinity] which said that the letter was sent in an attempt to collect a debt."[26] It said that "the delinquency owed for the property was $18,645.16 in interest," bringing "the total owed on the loan to $73,557.00."[27] "[A]t least $10,000 of the August 1, 2016 demand from [Special Default Services] includes interest in late fees which were charged while the lien was unsecured between July 2012 and the present."[28] Special Default Services recorded a substitution of trustee name it as trustee on the plaintiffs' deed of trust on September 13, 2016.[29] On September 21, 2016 Special Default Service recorded a notice of default and election to sell under deed of trust on the plaintiffs' property.[30] On December 27, 2016, they recorded a notice of trustee's sale.[31]

### 5. The Plaintiffs Sue Trinity and Special Default Services

The plaintiffs sued Trinity, Special Default Services, and Does 1 through 50 in a class action.[32] They define the proposed class as "[a]ll borrowers who filed for Chapter 7 Bankruptcy protection and received a discharge thereunder, had a second lien loan at the time of filing the Chapter 7 Bankruptcy that was underwater or undervalued at anytime after the filing of the Chapter 7 Bankruptcy, and that received correspondence from the Defendant [Special Default Services] and/or Defendant [Trinity] indicating that it was attempting to collect interest or late fees from the

---

[25] *Id.* at 5 (¶ 25).
[26] *Id.* at 5 (¶ 26).
[27] *Id.* at 5 (¶ 26).
[28] *Id.* at 10 (¶ 48).
[29] Request for Judicial Notice – ECF No. 15, Ex. C.
[30] *Id.* Ex. D.
[31] *Id.* Ex. E.
[32] FAC – ECF No. 13 at 5 (¶ 27).

ORDER – No. 17-cv-03612-LB 4

1 borrower that accumulated while the property was underwater or undervalued."[33]

2 The complaint charges Special Default Services (claims 1 and 2) with violating the Fair Debt Collection Practices Act (15 U.S.C. § 1692(e)).[34] They charge all defendants (claims 3 and 4) with violating the California Rosenthal Act's requirement that debt collectors comply with the Fair Debt Collection Practices Act (Cal. Civ. Code § 1788.17).[35]

Trinity and Special Default Services filed a motion to dismiss for failure to state a claim under Rule 12(b)(6).[36] They also filed a motion to expunge lis pendens and for attorney's fees.[37]

## GOVERNING LAW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that it is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[33] *Id.*

[34] *Id.* at 7–11.

[35] *Id.* at 11–14.

[36] Mot. – ECF No. 15.

[37] Mot. – ECF No. 19.

unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

Plaintiffs bring four claims against the defendants for violating federal and California laws prohibiting unfair debt collection practices. The court dismisses all four claims. Claims one and two fail because the plaintiffs do not allege sufficiently that Special Default Services engaged in "debt collection" under the Fair Debt Collection Practices Act. Claim three and claim four fail because Special Default Services' actions are not subject to the Rosenthal Act, and the plaintiffs' Rosenthal Act claims against both defendants are based on violations of the Bankruptcy Code. The court therefore dismisses the complaint without prejudice and with leave to amend.

### 1. Fair Debt Collection Practices Act (15 U.S.C. § 1692) Claims

The plaintiffs allege two Fair Debt Collection Practices Act claims against Special Default Services.[38] In claim one, the plaintiffs allege that Special Default Services violated § 1692e by sending them "inflated monetary demands."[39] In claim two, they allege that Special Default Services violated § 1692f by sending them a "demand for a debt which was unauthorized by law."[40] Both claims fail because the plaintiffs do not plausibly allege that Special Default Services qualifies as a "debt collector" under the Fair Debt Collection Practices Act.

To prevail on a Fair Debt Collection Practices Act Claim the plaintiff must allege the

---

[38] FAC – ECF No. 13 at 7–11.

[39] *Id.* at 8 (¶ 39).

[40] *Id.* at 10 (¶ 49).

ORDER – No. 17-cv-03612-LB 6

following: "(1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004)). "The FDCPA imposes liability only when an entity is attempting to collect debt." *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. § 1692(e)).

The Fair Debt Collection Practices Act defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); *see Ho*, 858 F.3d at 571 ("For the purposes of the FDCPA, the word 'debt' is synonymous with 'money.' "). A "debt collector" includes any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).

The Ninth Circuit has explicitly held that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Ho*, 858 F.3d at 572. "Because the money collected from a trustee's sale is not money owed by a consumer, it isn't 'debt' as defined by the FDCPA." *Id.* at 572. "Foreclosing on a trust deed is an entirely different path than collecting funds from a debtor." *Id.* (quoting *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)).

Furthermore, under California Civil Code section 2924(a)(1), a "trustee, mortgagee, or beneficiary . . . shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default." A foreclosing entity therefore must send a notice of default in order to conduct a trustee's sale. *Ho*, 858 F.3d at 573; *see Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994) ("The foreclosure process is commenced by the recording of a Notice of Default and Election to Sell by the trustee."). "If [a

1  trustee] can administer a trustee's sale without collecting a debt, it must be able to maintain that

2  status when it takes the statutorily required steps to conduct the trustee's sale." *Ho*, 858 F.3d at

3  573. As such, "[t]he right to 'enforce' the security interest necessarily implies the right to send the

4  required notices; to hold otherwise would divorce the notices from their context." *Id.*

5      To be liable under 15 U.S.C. §§ 1692e or 1692f, Special Default Services must be a debt

6  collector. Taken together with the judicially noticed documents, the complaint does not plausibly

7  allege that Special Default Services was a debt collector. Instead, it enforced a security interest on

8  the plaintiffs' property. Special Default Services was the trustee on the plaintiffs' property.[41] It

9  initiated foreclosure proceedings on the property.[42] The plaintiffs base claims one and two on a

10  single "correspondence" that Special Default Services sent on August 1, 2016.[43] The

11  correspondence "indicated that [Special Default Services] was providing services related to a debt

12  owed to [Trinity] and that as of August 1, 2016 the delinquency owed on the property was

13  $18,645.16 in interest."[44] As trustee, Special Default Services sent that notice to enforce a security

14  interest. Because Special Default Services was enforcing a security interest, it is not a "debt

15  collector" under the Fair Debt Collection Practices Act.

16      The plaintiffs conclusorily allege that Special Default Services "is a debt collector because [it]

17  regularly collects or attempts to collect debts owed or due or asserted to be owed or due to

18  another."[45] They also allege that the August 1, 2016 letter from Special Default Services

19  "indicated that it was being sent in an attempt to collect a debt."[46] They allege no facts supporting

20  these conclusions. Instead, they focus on "inflated" amounts that Special Default Services said the

21  plaintiffs owed Trinity. Even if these amounts were inflated, the plaintiffs have not plausibly

22  alleged "how the addition of interest and other fees, even if improper, transforms a communication

---

[41] Request for Judicial Notice – ECF No. 16, Ex. C.

[42] *Id.* Exs. D, E, F.

[43] FAC – ECF No. 13 at 8 (¶ 34).

[44] *Id.*

[45] *Id.* at 7 (¶ 32).

[46] *Id.* at 8 (¶34).

ORDER – No. 17-cv-03612-LB     8

sent as part of the nonjudicial foreclosure process into something beyond the enforcement of a security interest." *Fitzgerald v. Bosco Credit*, No. 16-cv-01473-MEJ, 2017 WL 3602482, at *6 (N.D. Cal. Aug. 21, 2017).

The plaintiffs argue that Special Default Services' status as a trustee does not shield it from all Fair Debt Collection Practices Act claims.[47] They are correct that an entity is not shielded from the Fair Debt Collection Practices Act simply because it is an entity "whose principal purpose is to enforce security interests." *See Ho*, 858 F.3d at 573. But here, Special Default Services' specific acts as the trustee foreclosing on the plaintiffs' property — not its status generally as a company that acts as a trustee — confirm that it was not acting as a "debt collector." No facts in the plaintiffs' complaint show that Special Default Services' actions were unrelated to the foreclosure on their property. Special Default Services enforced a security interest as the trustee under the deed of trust that plaintiffs used to secure a loan.[48]

The plaintiffs failed to allege sufficiently that Special Default Services acted as a debt collector. The plaintiffs' claims one and two under the Fair Debt Collection Practices Act § 1692e and §1692f fail.

### 2. California Rosenthal Act (California Civil Code § 1788.1) Claims

In claims three and four, the plaintiffs allege that the defendants violated the California Rosenthal Act. In claim three, the plaintiffs allege that both defendants violated the Fair Debt Collection Practices Act § 1692e, which in turn violates the Rosenthal Act.[49] In claim four, they allege that Trinity violated the Rosenthal Act through the Fair Debt Collection Practices Act § 1692f(1) by charging interest in fees on their loan while it was underwater.

The plaintiffs do not plausibly allege that Special Default Services or Trinity violated the Rosenthal Act. Claim three against both defendants and claim four against Trinity fail because the

---

[47] Opp. – ECF No. 23 at 6–7.

[48] FAC – ECF No. 13 at 12; Request for Judicial Notice – ECF No. 16, Exs. A, B, C, D, E, and F.

[49] FAC – ECF No. 13 at 11–12 (¶¶ 57, 63).

ORDER – No. 17-cv-03612-LB 9

plaintiffs rely on the Fair Debt Collection Practices Act as a remedy for the defendants' alleged Bankruptcy Code violations. Additionally, claim three against Special Default Services fails because the Rosenthal Act does not apply to actions taken by a trustee foreclosing on a property.

The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts[.]" Cal. Civ. Code § 1788.1(b). "In addition to providing its own standards governing debt-collection practices, the Rosenthal Act also requires that, with limited exceptions, 'every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of' the Fair Debt Collection Practices Act." *Fitzgerald*, 2017 WL 3602482, at *8 (quoting § 1788.17).

"The Rosenthal Act defines a debt collector as any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." *Id.* (citing § 1788.2(c)). "The definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts." *Id.* (citation omitted) (brackets omitted). "The Rosenthal Act defines a 'debt' as 'money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person.'" *Id.* (citing § 1788.2(d)). In interpreting this definition, "courts in this district have held that unless the claim arises from activities 'beyond the scope of the ordinary foreclosure process,' the Rosenthal Act does not apply to foreclosure proceedings." *Thompson v. Nationstar Mortgage*, No. 17-cv-2865-DMR, 2017 WL 3232549, at *5 (N.D. Cal. July 31, 2017) (quoting *Reyes v. Wells Fargo Bank*, No. 10-cv-1667-JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011)).

Additionally, a trustee complying with California foreclosure requirements cannot be held liable under the Rosenthal Act. *See* Cal. Civ. Code § 2924(b) ("In performing the acts required by this article, a trustee shall not be subject to [the Rosenthal Act]"). And furthermore, "[a] trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage." *Id.*

The plaintiffs' Rosenthal Act claims rely on alleged violations of the Fair Debt Collection

Practices Act §§ 1692e and 1692f. Section 1692e prohibits "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692f prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

Additionally, "[t]he Ninth Circuit has rejected attempts to use the FDCPA as a remedy for a Bankruptcy Code violation." *Fitzgerald*, 2017 WL 3602482, at *7. (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510–11 (9th Cir. 2002)). In *Walls*, the Ninth Circuit explained that "[w]hile the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code." *Walls*, 276 F.3d at 510–11. Congress did not intend "to allow debtors to bypass the [Bankruptcy] Code's remedial scheme when it enacted the FDCPA." *Walls*, 276 F.3d at 511. To allow debtors to do so would "create a new remedy would put [courts] in the business of legislating." *Id.* at 507. Thus, a claim based on a violation of Bankruptcy Code § 506(b) cannot be the grounds for a claim under the Fair Debt Collection Practices Act. *See Fitzgerald*, 2017 WL 3602482, at *7 (dismissing a plaintiff's claim under § 1692f because the allegations were based on a violation of Bankruptcy Code § 506(b)).

### 2.1. Special Default Services (Claim Three)

The plaintiffs' Rosenthal Act claim against Special Default Services fails for two reasons. First, as a trustee sending foreclosure notices, Special Default Services is not subject to the Rosenthal Act. Second, the plaintiffs claim relies on the Fair Debt Collection Practices Act as a remedy for an alleged Bankruptcy Code violation.

The plaintiffs do not sufficiently allege that Special Default Services correspondence was "beyond the scope of the ordinary foreclosure process." *Reyes v. Wells Fargo Bank*, No. 10-c-1667-JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011). This correspondence is therefore not subject to the Rosenthal Act. *Id.*; *see also* Cal. Civ. Code § 2924(b).

The plaintiffs contend Special Default Services was acting within its capacity as a debt

collector, not a foreclosure trustee.[50] As explained in detail above, the complaint contains no facts supporting that allegation.

Additionally, the Rosenthal Act claim against Special Default Services fails because it relies on the Fair Debt Collection Practices Act as a remedy for an alleged violation of Bankruptcy Code § 506(b). Plaintiffs state that Special Default Services "violated the FDCPA and Rosenthal FDCPA by sending a debt collection demand which included a demand for payment on interest which was charged to Plaintiff's loan in violation of the Bankruptcy Code."[51] Bankruptcy Code violations cannot be the basis of a valid Fair Debt Collection Practices Act claim. The plaintiffs do not sufficiently allege that Special Default Services violated § 1692e, and therefore do not state a plausible claim under the Rosenthal Act.

### 2.2. Trinity Financial Services (Claims Three and Four)

In claims three and four, the plaintiffs allege that Trinity violated the Rosenthal Act because it violated the Fair Debt Collection Practices Act §§ 1692e and 1692f. They allege that Trinity violated § 1692e on the grounds that it send them "false and misleading" letters charging fees and interest on their loan while it was underwater, in violation of Bankruptcy Code § 506(b).[52] They allege that it violated § 1692f because it charged unauthorized interest and fees on their loan "in violation of the bankruptcy code."[53] As explained above, the plaintiffs cannot premise Fair Debt Collection Practices Act claims on a violation of Bankruptcy Code § 506(b). Therefore, claims three and four against Trinity fail.

The plaintiffs do not plausibly allege that Special Default Services or Trinity violated the Rosenthal Act. The court dismisses claim three against Special Default Services and claims three and four against Trinity without prejudice and with leave to amend.

---

[50] Opp. – ECF No. 23 at 5.

[51] *Id.*

[52] *Id.* at 10 ("Plaintiffs allege that [Trinity] violated [the Rosenthal Act] beginning in July 2015 by making inflated demands for payment in violation of the bankruptcy code."); FAC – ECF No. 13 at 12 (¶¶ 63–64, 73).

[53] Opp. – ECF No. 23 at 10; FAC – ECF No. 13 at 11– 12 (¶¶ 54–67).

ORDER – No. 17-cv-03612-LB 12

### 3. Motion to Expunge Lis Pendens and for Award of Attorney's Fees

The defendants filed a motion to expunge lis pendens and to award attorney's fees. The court denies the motion to expunge as moot and denies the motion to award attorney's fees.

The plaintiffs withdrew the lis pendens.[54] Therefore, the motion to expunge is moot.

A court may award attorney's fees and costs to a prevailing party on a motion to expunge lis pendens. Cal. Code Civ. Pro. § 405.38. When a party withdraws lis pendens while a motion to expunge is pending, the court has discretion to award attorney's fees. *Castro v. Superior Court*, 116 Cal. App. 4th 1010, 1023 (2004). The court exercises its discretion and declines to award fees and costs, generally for the reasons advanced by the plaintiffs.[55]

## CONCLUSION

The court grants the defendants' motion to dismiss and dismisses the complaint without prejudice and with leave to amend. The court denies the defendants' motion to expunge and for attorney's fees. The plaintiffs must file any amended complaint by October 5, 2017.

This disposes of ECF Nos. 15, 19

**IT IS SO ORDERED.**

Dated: September 14, 2017

LAUREL BEELER
United States Magistrate Judge

---

[54] Opp. – ECF No. 24-1 at 4.

[55] *See* Opp. – ECF No. 24 at 3.